United States Court of Appeals,

Eleventh Circuit.

No. 93-8724.

Jimmie L. BROWN, Plaintiff-Appellant,

v.

Donna E. SHALALA, Secretary, Health and Human Services,
Defendant-Appellee.

Jan. 26, 1995.

Appeal from the United States District Court for the Middle
District of Georgia. (No. 5:91-00287-1-CV-MAC(DF)), Claude W.
Hicks, Jr., Magistrate.

Before EDMONDSON and CARNES, Circuit Judges, and HENDERSON, Senior
Circuit Judge.

PER CURIAM:

Jimmie L. Brown appeals from the judgment entered in the
United States District Court for the Middle District of Georgia [1]
affirming the denial by the Secretary of Health & Human Services
("Secretary") of her application for disability insurance benefits
under Title II of the Social Security Act, 42 U.S.C. §§ 416(i),
423. For the reasons set forth below, we reverse and remand for
further proceedings.

I. BACKGROUND

Brown, born on July 6, 1930, has past relevant work experience
selling furniture and insurance, collecting premiums and has been
employed as a domestic, a medical file clerk and a record keeper.

---

[1] The entry of judgment in this case was ordered by a United
States magistrate judge to whom the case was referred by consent
of the parties. *See* 28 U.S.C. § 636(c)(1). This appeal is taken
directly from the magistrate judge's order, as permitted by 28
U.S.C. § 636(c)(3).

She applied for disability insurance benefits on June 20, 1989, [2] alleging that she became unable to work on March 9, 1989 due to paralysis of unknown origin, which her doctor believed was "in [her] mind." (Admin. tr. at 127). The application was denied and she requested and received a hearing before an administrative law judge ("ALJ"). Prior to the hearing, she was notified of her right to be represented by an attorney or other qualified person of her choice.[3] She appeared *pro se,* however, and executed a form which indicated that she was willing to proceed alone. After she signed the waiver, the following colloquy between Brown and the ALJ took place:

> ALJ:  Now, you have signed a waiver of your right to Counsel, and you were informed when you received your notice of hearing that you had the right to have—
>
> CLMT:  We—
>
> ALJ:—a representative.
>
> CLMT:  We sent it in, but they just wouldn't, wouldn't, we don't understand it.  He even, my—
>
> ALJ:  Uh-huh.
>
> CLMT:—counselor called and the lady said we got it, we got it, it's been sent in.  So,—
>
> ALJ:  Uh-huh.

---

[2]The administrative record also contains an application for benefits dated March 10, 1986, which was denied upon initial consideration by the Secretary on July 24, 1986.  The record does not reflect that Brown sought administrative or judicial review of that denial.  The only application relevant to this appeal is the one filed on June 20, 1989.

[3]The regulations provide that a claimant may appoint as his or her representative any person of good character and reputation who is capable of providing valuable help in connection with the claim and who is not otherwise disqualified or prohibited by law from acting in that capacity.  20 C.F.R. § 404.1705(b).

CLMT:—when I got the letter to come over here, it, it wasn't, his, they hadn't sent him a copy. So, I called him and he came over to the house and he said, well I talked to him and I did all I know to do. He said I just been rejected. He said just go on without me.

ALJ: Okay. Now, is this Georgia Legal Service?

CLMT: No, sir. It was Quinto (Phonetic) Norris, I [sic] man I worked under and worked with.

ALJ: Uh-huh.

CLMT: Until 1986.

ALJ: And, and what was he? Was he?

CLMT: He, he's, you know [a] supervisor to the Life of Georgia Insurance Company.

ALJ: I see. And he, you asked him to represent you here today?

CLMT: I asked him, because the last years that I really had strength to work.

ALJ: Uh-huh.

CLMT: I was working side by side with him, every time he made a step I made one.

ALJ: Okay. But, I mean this, you would ask him to represent you, is that [what] you're talking about?

CLMT: Yes, sir.

ALJ: Okay. And he ... said no?

CLMT: He said, yes. He filed [sic] out the papers and—

ALJ: Uh-huh.

CLMT:—we mailed them back and everything. He was—

ALJ: Uh-huh.

CLMT:—calling them.

ALJ: Okay. Well, the main thing I want you to understand here today, is though you do know you had a right to representation?

CLMT: And we, we, we, we sent one in, but they just wouldn't. I don't understand.

ALJ: Okay. Well, here's my thing Miss Brown. I'm, I'm, I don't mean [to be] quick with you, so please don't think it's that. But, you were informed in a notice of hearing, that you have a right to have a representative. You have signed a waiver saying that you understand that and you're ready to proceed today without—

CLMT: Yes—

ALJ:—a representative.

CLMT:—I can go on without a representative.

ALJ: Yeah. Is that what you want to do?

CLMT: I can go on without it, sir, because I been signed up. Rehabilitation is sending me to school, starting in two weeks.

ALJ: Uh-huh.

CLMT: Trying to get me to where I can do something—

ALJ: Okay. Well, I'm not, I don't want to get into that now. I want to stick to the issues that we're addressing. And that is you are ready to proceed without a representative here today. That's what you desire to do, is that correct?

CLMT: Yes, sir.

(*Id.* at 46-48).

Following this exchange, the ALJ proceeded with the hearing. Brown testified that she was seeking vocational training in computer programming, but that she was precluded from working for a number of reasons. Her symptoms included ambulatory difficulties, pain, numbness and uncontrolled bowel movements. She stated that she could stand for only five minutes and sit for only fifteen minutes. She also claimed that she became ill after eating a piece of cake allegedly poisoned with ground silver by her coworkers at the furniture store and that her physician, Dr. D. Robert Howard, confirmed during her last examination that she had some type of toxin in her body.

Aside from Brown's testimony, the evidence admitted at the

hearing included reports from various treating and consulting physicians and psychologists. The record did not contain reports concerning the last two visits Brown claimed she had with Dr. Howard;[4] nor did it contain any information from a state rehabilitation center in Macon, Georgia, where Brown said she had been undergoing therapy. The ALJ indicated that he would request updated records from Dr. Howard as well as from the Macon facility, but the documents are not part of the record.

After the hearing the ALJ did obtain a vocational evaluation from Goodwill Industries, which advised that Brown was capable of performing a variety of clerical and administrative jobs. He then invited Brown to submit objections to this assessment. She replied with a hand-written letter in which she reiterated many of her complaints, including certain events surrounding the alleged poisoning, and indicated that she lacked sufficient funds to purchase her medication. In a postscript she stated that she "[w]rote this letter 3 times trying to say what I wanted to say[.] [M]y memoral [sic] is still not as good as it should be, but by the help of God it is better[.]" (*Id.* at 283).

The ALJ found that Brown suffered from arthritis and dementia, manifested by hysterical extremity paralysis and that she experienced some discomfort caused by pain. He concluded, nevertheless, that these impairments did not substantially interfere with her ability to perform her past relevant work and

---

[4]The medical reports submitted by Dr. Howard span the period of time between August 3, 1989 and November 13, 1989. Brown testified that she saw the doctor the day before the hearing, which was held on June 20, 1990, and two weeks prior to the hearing. (*See* Admin. tr. at 52-53).

therefore denied benefits.  Brown then filed a request for a review by the Appeals Council.  While the request was pending, she retained an attorney, who sought to reopen the hearing alleging that Brown's waiver of representation was invalid and that the ALJ failed to fully develop the record.  Counsel also submitted the affidavit of Brown's husband, who stated, *inter alia,* that his wife suffered from extreme nervousness, problems with concentration, increasingly paranoid thoughts, rambling and confused speech and mood swings, which ranged from explosive incidents to severe bouts of depression.  The Appeals Council found no basis for granting review, however, and allowed the ALJ's decision to stand as the final decision of the Secretary.

Brown then sought judicial review pursuant to 42 U.S.C. § 405(g).  As noted earlier, by consent of the parties, the case was assigned by the district court to a United States magistrate judge for final disposition.  As did the Appeals Council, the magistrate judge rejected Brown's contentions with respect to her decision to proceed *pro se* at the hearing and the development of the record. He also found no merit in her claims that the ALJ failed to properly evaluate the combined effect of all of her impairments and her subjective complaints of pain.  Concluding that substantial evidence supported the Secretary's denial of benefits, the court entered judgment in favor of the Secretary.

II. DISCUSSION

On appeal, Brown reasserts the arguments she raised before the magistrate in the district court.  In view of our conclusion that Brown did not receive a full and fair hearing, we do not address

whether the ALJ committed legal error in evaluating the evidence or whether substantial evidence in the record as it now stands supports the denial of benefits.

A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ. *Smith v. Schweiker,* 677 F.2d 826, 828 (11th Cir.1982); 42 U.S.C. § 406. Whether or not the applicant is represented, the ALJ still has a duty to develop a full and fair record. *Clark v. Schweiker,* 652 F.2d 399, 404 (5th Cir.Unit B July 1981).[5] When the right to representation has not been waived, however,

> the hearing examiner's obligation to develop a full and fair record rises to a special duty. This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."

*Smith,* 677 F.2d at 829 (citations omitted). "Under this standard, we are not required to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Clark,* 652 F.2d at 404. Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record. *Kelley v. Heckler,* 761 F.2d 1538, 1540 (11th Cir.1985).

The portions of the hearing transcript quoted in Part I of this opinion plainly reveal that Brown was confused by the ALJ's

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former United States Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

questions concerning representation. Although she eventually responded in the affirmative when asked whether she desired to proceed alone, her earlier statements reflect that she wanted the assistance of her former supervisor, who told her to go on without him. Nothing in her testimony evinces an understanding that she had other options which were either explored or rejected. [6] *Cf. Cowart v. Schweiker,* 662 F.2d 731, 734-35 (11th Cir.1981) (claimant's affirmative response when asked whether she wished to proceed without counsel did not reflect a true desire to do so when viewed in the context of other testimony that she had unsuccessfully attempted to obtain free public assistance and was unable to afford a private attorney). On this record, we cannot concur with the magistrate judge that Brown knowingly and voluntarily waived her right to be represented at the hearing.

Even if we agreed that Brown did effectively renounce her right to counsel, there remains the question of whether the ALJ fulfilled his duty to develop the record. [7] We hold that he did not and that Brown was prejudiced thereby. *See Kelley,* 761 F.2d at 1540 n. 2 (recognizing "a slightly different standard" for evaluating whether an unrepresented claimant has received a full

---

[6]A notice sent to Brown prior to the hearing informed her that a private attorney might be willing to take her case on an contingent fee basis. It also listed the addresses and telephone numbers for the Georgia Legal Services Program in her area and a national referral organization as sources of possible free legal assistance. Brown was not asked whether she sought help from any of these or other related services, nor was any effort made to determine whether she understood that she might obtain legal representation in those ways.

[7]The magistrate judge erroneously treated Brown's waiver as dispositive of the issue of whether she received a full and fair hearing.

and fair hearing depending upon whether there has been a valid waiver and noting that, in any case, there must be a showing of prejudice to trigger a remand to the Secretary for reconsideration). As noted above, there is no indication that the ALJ contacted Dr. Howard for up-to-date medical records even though Brown testified that she was examined by him twice just prior to the hearing. The most recent information submitted by his office predates the hearing by more than six months. The ALJ also agreed to procure a report from the center in Macon where Brown had undergone rehabilitation therapy, but no such document was made a part of the record.[8]

In evaluating the necessity for a remand, we are guided by "whether the record reveals evidentiary gaps which result in unfairness or "clear prejudice.' " *Smith,* 677 F.2d at 830 (quoting *Ware v. Schweiker,* 651 F.2d 408, 413 (5th Cir.Unit A July 1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982)). The lack of medical and vocational documentation supporting an applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits. We have no way of knowing whether the evidence missing from this case would sustain Brown's contentions

---

[8]Brown testified that a counselor at the rehabilitation center, named Mr. Crawford, had been working with her to determine whether she could attend school to learn computer programming and that they had discussed a plan for her to take some "re-media [sic] courses in English." (Admin. tr. at 80). The ALJ stated that he would "send for records from him[,]" that is, from Mr. Crawford, as well as a report from Goodwill Industries, where Brown was referred by the center for a vocational and psychological assessment. (*Id.* at 81). Perhaps the ALJ believed that the latter report, which he did obtain, constituted the extent of the outstanding documentation with respect to the efforts made to evaluate Brown's ability to work. Her testimony, however, appears to indicate otherwise.

of her inability to work. In the absence of proof to the contrary, however, we must assume that it does lend credence to her allegations.[9]

We also observe that the ALJ did not question Brown's husband concerning her complaints.[10] In *Cowart,* this court held that the ALJ failed to discharge his special duty to develop the facts where he neglected to elicit such clearly relevant and readily available testimony. *See Cowart,* 662 F.2d at 735. The transcript of the hearing portrays a claimant who had great difficulty conveying with any precision the manner in which her various subjective ailments affected her ability to engage in substantial gainful activity. "Any lawyer prepared for a hearing ... would realize that the statement of such subjective matters by the claimant would be the kind of evidence that most required supporting testimony by family or friends." *Clark,* 652 F.2d at 404. Although the Appeals Council was later able to consider Mr. Brown's affidavit, the value of live testimony, where demeanor can be considered and credibility more readily evaluated, cannot be discounted. An attorney would have been able also to assist Brown in responding to the vocational assessment prepared by Goodwill Industries.

III. CONCLUSION

---

[9]We do not mean to suggest that a remand is warranted any time a claimant alleges that the ALJ has neglected to complete the record. The likelihood of unfair prejudice to a claimant may arise, however, where as here, the evidentiary gap involves recent medical treatment, which the claimant contends supports her allegations of disability, or the receipt of vocational services.

[10]Because Brown testified that her husband drove her to the hearing, we presume he was an available witness.

In view of the evidentiary gaps in the record, we find that Brown was not afforded a full and fair hearing and that she was prejudiced thereby.  The judgment is therefore REVERSED and the case is REMANDED with instructions that it be returned to the Secretary for further proceedings consistent with this opinion.