[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12595
Non-Argument Calendar

_____

D. C. Docket No. 06-00340-CV-W-N

GERALDINE CALDWELL,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(January 7, 2008)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Geraldine Caldwell appeals the district court's order affirming the

Commissioner's denial of her application for disability insurance benefits ("DIB") under 42 U.S.C. § 405(g), and supplemental security income ("SSI") under 42 U.S.C. § 1383(c)(3). On appeal, Caldwell argues that: (1) the Administrative Law Judge ("ALJ") erred by failing to consider and state what weight she gave to a state probate order of civil commitment; (2) the ALJ erred when she failed to explain what weight she gave to two medical opinions; (3) the ALJ erred by discrediting the opinions of two treating psychiatrists; and (4) the ALJ's combined errors result in reversible error.

## I. BACKGROUND

On October 6, 2003, Caldwell applied for DIB and SSI. She alleged in her application that she suffered from hypertension and acute psychosis with depression. She stated that the disability onset date was June 17, 2003, the date on which an ALJ had denied her previous application for DIB and SSI. After a hearing, the ALJ denied her benefits on November 3, 2005. The Appeals Council denied her subsequent request for review, and, consequently, the ALJ's decision became the final decision of the Commissioner of Social Security. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Caldwell then filed suit in district court, and the district court affirmed the ALJ.

## II. STANDARD OF REVIEW

2

We review a social security case to determine whether the Commissioner's decision was supported by substantial evidence and whether the correct legal standards were applied. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

## III. DISCUSSION

### A. Probate Court Commitment Order

Caldwell first argues that the ALJ erred because she failed to state what weight she gave to a state probate court order of civil commitment. While we agree with Caldwell that the ALJ is required to "state specifically the weight accorded to each item of evidence and why [she] reached that decision," *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), the ALJ's failure only constitutes reversible error if it created an evidentiary gap that caused unfairness or clear prejudice. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam).

Caldwell was committed for less than two weeks, from August 31, 2001 until September 10, 2001. As the district court recognized, the psychological expert that the ALJ consulted examined Caldwell's records from August 2001 to the date of the hearing. The ALJ adopted the expert's testimony that Caldwell's condition had improved significantly since August 2001. Accordingly, the ALJ's failure to explicitly state the weight that she gave to the commitment order did not create an evidentiary gap, and Caldwell's first argument fails.

B.  Weight Given to Medical Opinions

Caldwell next argues that the ALJ erred when she failed to explain what weight she gave to the opinions of Dr. Kenneth Warren, an examining psychologist, and Dr. Scott Bell, an examining physician.

An ALJ's failure to state with particularity the weight given different medical opinions is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

*1.  Dr. Bell*

The ALJ consulted a vocational expert ("VE") to help her assess Caldwell's residual functional capacity.  In response to a hypothetical question based on an individual with specific limitations similar to Caldwell's, the VE testified that such a person would have few restrictions beyond an inability to perform complex and varied tasks but could perform light, unskilled jobs such as production assembler, cafeteria attendant, and machine tending operator.  Caldwell argued before the district court that the ALJ erred by not including Dr. Bell's findings in the hypothetical limitations that she presented to the VE.  Dr. Bell had seen Caldwell

4

for a consultative physical examination in relation to Caldwell's previous application for benefits on February 6, 2003. His examination notes indicated that Caldwell had no relevant "visual, communicative, or work place environmental limitations," but he recommended in his physical capacities evaluation that Caldwell only "occasionally" work around "fumes, noxious odors, dust, mists, gases, or poor ventilation" or around moving mechanical parts.

We agree with the district court that the ALJ's failure concerning Dr. Bell's opinions was harmless error because the application of Dr. Bell's limitations would not have changed the result. Based on the VE's testimony, the ALJ found that Caldwell had the residual functional capacity to perform jobs existing in significant numbers in the national economy. The job of production assembler, as normally performed in the national economy, requires no exposure to moving parts, humidity, atmospheric conditions, toxic or caustic chemicals, or "other environmental conditions." Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, 706.687-010 (1993). Thus, because the limitations that Dr. Bell highlighted would not affect Caldwell's ability to perform one the of jobs that, according to the VE, is appropriate for Caldwell and exists in significant numbers in the national economy, the ALJ's failure to discuss the weight she gave to Dr. Bell's findings was

5

harmless.

2. *Dr. Warren*

The ALJ's failure to state what weight she accorded Dr. Warren's opinion was also harmless. The record includes a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment form, both completed by Dr. Warren on January 9, 2004. The ALJ mentioned Dr. Warren's findings, but did not state what weight she gave them. The ALJ explicitly stated, however, that she gave substantial weight to the testimony of Dr. Doug McKeown, citing that his testimony was generally consistent with the record. Dr. Warren's findings do not contradict Dr. McKeown's testimony.

Dr. McKeown testified that Caldwell had a moderately impaired ability to maintain "concentration in persistence and pace for periods of time up to two hours." Dr. Warren similarly suggested that Caldwell would need a break every two hours. Both Dr. Warren and Dr. McKeown agreed that Caldwell could perform simple tasks. The doctors also agreed that Caldwell's medical records showed that she had improved with treatment. Dr. Warren recommended that Caldwell be restricted from "close personal contact with the general public," which is consistent with the ALJ's finding that Caldwell could perform the jobs of machine tender and production assembler. Moreover, Dr. Warren's opinions do

6

not otherwise contradict the ALJ's findings. Accordingly, the ALJ's failure to state what weight she gave to the opinions was harmless error.

C. Discredited Medical Opinions

Third, Caldwell argues that the ALJ erred by discrediting the opinions of two treating psychiatrists, Dr. Mark Livingston and Dr. Josue Becerra. The testimony or opinion of a treating physician must be given substantial or considerable weight unless there is "good cause" for not doing so. *Lewis*, 125 F.3d at 1440. "Good cause" exists where (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records. *Id.* The ALJ must clearly articulate, however, the reasons for giving less weight to the opinion of a treating physician, and the failure to do so constitutes reversible error. *Id.*

In her opinion, the ALJ explicitly rejected the assessments provided by Dr. Livingston and Dr. Becerra, stating that she discredited their opinions because they were inconsistent with their own treatment notes. The psychiatric records from South Central Alabama Mental Health, where Dr. Livingston and Dr. Becerra treated Caldwell, indicate that her mental status was "normal" and "appropriate," and that she consistently experienced no acute symptoms. On May 18, 2004, the

psychiatric records indicate that Caldwell's mental health status was "well maintained." On August 10, 2004, the psychiatric records reflect that no changes needed to be made to Caldwell's treatment. On January 18, 2005, the records indicate that the psychiatrists discontinued Caldwell's Wellbutrin treatment and that she was "doing well." The records also indicate that Caldwell's progress toward her treatments goals was consistently rated as "good," and the most recent record shows that Caldwell's progress was rated as "excellent." The latest psychiatric record, May 17, 2005, indicates that Caldwell's memory, attention span, and impulse control were good. The psychiatrist noted that Caldwell's mental status was normal, her behavior was normal, her affect was appropriate, her thought process was clear, and her thought content was normal.

Unlike those records, the residual functional capacity questionnaires that Livingston and Becerra completed for Caldwell on March 3, 2004 and May 31, 2005, respectively, both describe Caldwell's limitations as "mild," "moderate," "moderately severe," and "severe." Thus, substantial evidence supports a finding that the treatment records from South Central Alabama Mental Health contradict the medical opinions listed on the doctors' questionnaires. Accordingly, the ALJ did not err.

D. Combined Errors

8

Caldwell lastly argues that the combination of errors results in reversible error.  Because the ALJ did not commit any material errors, we disagree.

## IV.  CONCLUSION

Upon review of the record and the parties' briefs, we find no reversible error.  Accordingly, we affirm.

**AFFIRMED.**