[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 17, 2009
THOMAS K. KAHN
CLERK

No. 09-11240
Non-Argument Calendar

_____

D. C. Docket No. 08-00016-CV-FTM-SPC

NEREIDA VESY,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 17, 2009)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Nereida Vesy appeals the district court's order affirming the Commissioner

of Social Security's denial of her application for disability insurance benefits,

pursuant to 42 U.S.C. § 405(g). On appeal, Vesy argues that: (1) the Administrative Law Judge's ("ALJ") assessment of her residual functional capacity ("RFC") is not supported by substantial evidence; (2) substantial evidence does not support the ALJ's decision not to credit her subjective testimony concerning her symptoms; (3) the ALJ failed to adequately develop the administrative record; and (4) the ALJ's hypothetical questions to a vocational expert ("VE") failed to include all of her impairments. After careful review, we affirm.

In a social security case, we review the Commissioner's factual findings to determine whether they are supported by substantial evidence. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). We do not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." Id. "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). We review the Commissioner's legal conclusions de novo. Ingram, 496 F.3d at 1260.

I.

First, we disagree with Vesy's argument that the ALJ's RFC assessment is not supported by substantial evidence. The Social Security regulations establish a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Under the first two steps, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity, and whether the claimant has a severe impairment. Id. § 416.920(b) and (c). Under the third step, the ALJ must decide whether the claimant's impairments meet or medically equal a listed impairment. Id. § 416.920(d). If the claimant has a severe impairment that does not meet or equal a listed impairment, the ALJ must then determine whether the claimant has the residual functional capacity to perform her past relevant work. Id. § 416.920(e) and (f). "[R]esidual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545. If the claimant cannot perform her past relevant work, the ALJ must then determine whether the claimant may perform other work that exists in the national economy. 20 C.F.R. § 416.920(g).

Generally, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis, 125

3

F.3d at 1440. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his] reasons." Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (quotation omitted). We have found good cause for disregarding a treating physician's opinion where: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id.

In this case, the ALJ conducted a review of all of the medical evidence in the record, and his RFC assessment is supported by the medical evidence. As an initial matter, in determining Vesy's exertional impairments, the ALJ relied primarily on the opinions of Drs. Johnson and Seo. Dr. Johnson reported that Vesy was limited by fatigue and arthralgia, but could sit or stand for up to 6 hours in an 8-hour workday, and could lift and carry up to 15 pounds. Similarly, Dr. Seo found that Vesy could sit or stand for 30 minutes without interruption, was able to walk for a few blocks, and could lift and carry up to 20 pounds. Because Dr. Johnson was a long-term treating rheumatologist, the ALJ properly gave significant weight to her opinion. See Lewis, 125 F.3d at 1440. Moreover, Dr. Johnson's and Dr. Seo's

4

assessments were consistent with the medical evidence in the record, which suggested that Vesy retained the ability to perform a limited range of light work.[1]

We also find no support for Vesy's argument that Dr. Pollack's report -- which concluded that her examination of Vesy was "essentially unremarkable," and that Vesy did not have any exertional limitations -- failed to properly consider her fibromyalgia and IBS symptoms, and, therefore, should not have been considered by the ALJ. Indeed, Dr. Pollack did note that Vesy had a history of IBS, Lyme Disease, and knee and back pain. She simply concluded that those conditions did not cause any exertional impairments. And in any event, it does not appear that the ALJ placed great reliance on Dr. Pollack's assessment, as the ALJ found that Vesy did, in fact, have exertional impairments that restricted her to a limited range of light work.

As for Vesy's claim that the ALJ should not have relied upon the functional capacity evaluation of Dr. Ilkay, the ALJ's written opinion noted that Dr. Ilkay's

---

[1] As the record shows, in 1996, before the alleged disability onset date, Dr. Ekstrom placed Vesy off of work for approximately three months due to her Irritable Bowel Syndrome ("IBS") symptoms, but he later allowed her to return to light duty work, with no excessive bending or lifting. Drs. Bernstein, Dadrat, and Vogtland did not identify any functional impairments caused by Vesy's IBS. The state agency physician who reviewed Vesy's application concluded that she retained the capacity to perform light work. In 2001, Dr. Fernando reported that Vesy's fibromyalgia was "controlled," and that Vesy was able to occasionally exercise by walking or by riding a bike. Dr. Rodgers did not list any specific limitations on Vesy's ability to work in his treatment notes or medical evaluation forms.

5

opinion was "obviously limited to a urological standpoint only." Thus, it does not appear that the ALJ gave significant weight to Dr. Ilkay's opinion.

Vesy also argues that the ALJ should have given more weight to the opinion of Dr. Sell, a treating physician, who concluded that she: (1) could not sit or stand for more than 1 hour in an 8-hour work day; (2) could occasionally or never lift or carry items weighing less than ten pounds; (3) could not push or pull with either arm; (4) could occasionally reach above shoulder level, but could never bend, squat, kneel, or crawl. However, Dr. Sell's assessment was inconsistent with the opinions of Drs. Johnson and Seo. In addition, although Dr. Sell's treatment notes indicated that he treated Vesy for lower back pain, fibromyalgia, and IBS, they did not suggest that Vesy was limited to the extent found by Dr. Sell in his functional capacity evaluation. Therefore, the ALJ was not required to give significant weight to Dr. Sell's opinion. See Phillips, 357 F.3d at 1241.

Further, although Vesy argues that the ALJ's RFC assessment should have included non-exertional limitations, the medical evidence does not reveal any non-exertional impairments that affected Vesy's ability to work. Vesy testified that her IBS caused diarrhea and vomiting, which required her to take frequent bathroom breaks. But Drs. Bernstein, Vogtland, and Sell reported that Vesy's IBS was controlled when she was taking FiberCon. And while Vesy suffered from pain,

6

fatigue, and stiffness caused by arthralgia and fibromyalgia, Dr. Johnson concluded that those symptoms did not affect her ability to perform light duty work. As a result, the ALJ did not have to include any non-exertional symptoms in his RFC assessment. For all of these reasons, the ALJ's RFC assessment is supported by substantial evidence.

## II.

We likewise find no merit in Vesy's claim that the ALJ erred by declining to credit her subjective testimony concerning her symptoms. In a case where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective systems, we apply a three-part "pain standard." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id.

If the ALJ decides not to credit a claimant's subjective testimony, "he must articulate explicit and adequate reasons for doing so." Id. If the ALJ fails to articulate reasons for discrediting the claimant's testimony, then that testimony must be accepted as true. Id. In evaluating a claimant's credibility, the ALJ may

7

consider, among other things, the claimant's daily activities and the "type, dosage, effectiveness, and side effects" of any medication that the claimant uses to relieve her symptoms. 20 C.F.R. § 404.1529(c)(3)(i), (iv).

Here, the ALJ found that Vesy's subjective testimony regarding the frequency and intensity of her symptoms could not be fully credited because it was inconsistent with Vesy's daily activities and with the medical evidence. Thus, the ALJ's reasoning is consistent with the evidence in the record, and as a result, his credibility determination is supported by substantial evidence. Further, because Vesy's subjective testimony was inconsistent with the record, the ALJ's error in noting that Vesy had not requested any bathroom breaks during the hearing when she had in fact requested and received one break was harmless. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (holding that an ALJ's factual error is harmless if it does not affect the ALJ's conclusion).

### III.

Next, we reject Vesy's argument that the ALJ failed to properly develop the administrative record by ordering additional consultative examinations, re-contacting Drs. Seo and Sell for clarification of their functional capacity assessments, and making an inquiry into whether side effects from her medications contributed to her disability. In a social security case, the ALJ has an affirmative

8

duty to develop a full and fair record. Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995). This obligation applies regardless of whether the claimant is represented by counsel, but it rises to the level of a special duty when the claimant is unrepresented. Id. at 934-35. Nevertheless, the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving that she is disabled. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Consequently, it is the claimant's responsibility to introduce evidence in support of her application for benefits. Id. In determining whether it is necessary to remand a case for development of the record, we consider "whether the record reveals evidentiary gaps which result in unfairness of clear prejudice." Brown, 44 F.3d at 935 (quotations omitted).

In Cowart v. Schweiker, the claimant, who was unrepresented at the hearing but had not waived her right to counsel, testified that she was taking a number of medications which caused her to be "kind of zonked most of the time." 662 F.2d 731, 737 (11th Cir. 1981). Based on those facts, we held that the ALJ had a duty to investigate the side effects of the claimant's medications and to determine whether those side effects had an impact on her ability to work. Id. Yet, we have also held that the ALJ need not inquire into the side effects of a claimant's medications where the claimant was represented at the hearing, and did not assert that side

effects from her medications contributed to her disability. Cherry v. Heckler, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985).

Under the Social Security regulations, the ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917. But the ALJ is not required to order additional examinations if the evidence in the record is sufficient to allow for an informed decision. Ingram, 496 F.3d at 1269. In general, the ALJ should re-contact a medical source when the evidence received from that source is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 416.912(e). Under Social Security Ruling 96-5p, the ALJ must make "every reasonable effort" to re-contact a medical source when the medical evidence does not support the source's opinion, and the ALJ cannot ascertain the basis for that opinion from the case record. S.S.R. 96-5p (Cum. Ed. 1996).

In this case, the ALJ developed a full and fair record. Although there was some evidence that Vesy suffered from side effects caused by her medications, she did not allege that those side effects contributed to her disability and notably, was represented by counsel. As a result, the ALJ did not have a special duty to make a further inquiry into the effects of Vesy's medications. See Cherry, 760 F.2d at

10

1191 n.7. Moreover, the ALJ was not required to re-contact Drs. Seo and Sell or to order additional consultative examinations because the record already contained sufficient evidence for the ALJ to made an informed decision regarding whether Vesy was disabled. Ingram, 496 F.3d at 1269. Vesy therefore has not shown any error with respect to the ALJ's duty to develop the record.

IV.

Finally, we are unpersuaded by Vesy's claim that the ALJ's hypothetical question to the VE failed to include her non-exertional impairments. As noted above, under step five of the sequential evaluation process, the ALJ must determine whether the claimant is able to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ finds that the claimant is able to perform other work, he "must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). One way in which the ALJ may determine whether the claimant is able to perform other jobs is by posing a hypothetical question to a VE. Id. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Id. However, the ALJ's hypothetical need not include a claimant's asserted

impairments that are not supported by the medical evidence, or that are controlled or alleviated by medication. Ingram, 496 F.3d at 1270.

As the record shows, the ALJ's first hypothetical to the VE included all of the impairments which the ALJ found to be supported by the record. Further, the ALJ did not have to include any symptoms related to IBS because the medical evidence indicated that Vesy's IBS was being controlled through the use of FiberCon. Id. Thus, the ALJ properly relied upon the VE's testimony as substantial evidence to support his conclusion that Vesy could perform other work that existed in the national economy. See Wilson, 284 F.3d at 1227.

**AFFIRMED.**