[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16459
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-00832-JSS

CHRISTOPHER VANGILE,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 13, 2017)

Before MARCUS, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Christopher Vangile, proceeding pro se, appeals a magistrate judge's order

affirming the final decision of the Commissioner of the Social Security

Administration denying his application for disability insurance benefits and supplemental security income.[1]  Vangile alleges he is disabled due to chronic mastoiditis and a perforated eardrum.  He also says he experiences head and neck pain, headaches, and chronic ear infections, the treatment of which cause him nausea and dizziness.  The administrative law judge ("ALJ") determined Vangile was not disabled during the period between June 25, 2009 and the date of her decision (December 2, 2013).

Vangile raises three arguments on appeal.  He first argues the ALJ did not fully and fairly develop the record.  He also argues the ALJ erred by failing to consider whether his chronic mastoiditis was a severe impairment that met or was medically equal to one of the impairments listed in the relevant regulations.  Finally, Vangile says the ALJ erred in weighing medical opinion evidence and discrediting his pain testimony when she determined his residual functional capacity.  After careful review, we affirm.

I.

Vangile first argues the ALJ did not fairly and fully develop the record because she focused on his headaches and did not explore his other pain and discomfort.  We review de novo the legal principles that underlie the Commissioner's decision in Social Security cases.  Moore v. Barnhart, 405 F.3d

---

[1] Both parties consented to this case being decided by a magistrate judge.  See 28 U.S.C. § 636(c).

1208, 1211 (11th Cir. 2005) (per curiam). The ALJ has a duty to fully and fairly develop the record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). If a claimant is not represented, the ALJ has a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Brown v. Shalala, 44 F.3d 931, 934–35 (11th Cir. 1995) (per curiam) (quotation omitted). Nevertheless, the claimant bears the burden of proving his disability, so he is responsible for producing evidence to support his claim. Ellison, 355 F.3d at 1276. In determining whether to remand a case for further development of the record, we consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." Brown, 44 F.3d at 935 (quotations omitted). Thus, a claimant must show prejudice before we will find his right to due process has been violated and therefore remand his case for further development of the record. Id.

Here, the ALJ had no heightened duty to develop the record because Vangile was represented by counsel. At the administrative hearing, the ALJ asked Vangile to name his ongoing problems related to his mastoidectomy. Vangile testified that he experienced head, neck, and eye pain. The ALJ explicitly considered these symptoms in her decision, but found Vangile's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely credible" based on his testimony and the record. Relatedly, at the end of the

3

hearing, the ALJ told Vangile he had not provided enough medical evidence to support his allegations.  And the supplemental records Vangile submitted after the hearing did not contain additional evidence of any head, neck, or eye pain.  Indeed, they seem to indicate he denied having any such pain.  Because Vangile failed to submit medical evidence of his other pain into the record, we cannot say the ALJ erred by failing to "probe" and "inquire" about that pain.  Id. at 934–35 (quotation omitted); see Ellison, 355 F.3d at 1276.  Further, even assuming the ALJ did not sufficiently develop the record, we cannot remand this case for more factual development absent a showing of unfairness or clear prejudice.  Brown, 44 F.3d at 935.  Vangile has failed to make this showing because he does not specify how the ALJ's failure to develop a more extensive record about his other pain prejudiced him.  See id.

## II.

The Social Security regulations establish a five-step sequential process for evaluating whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); see Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).  The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past

4

relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

Winschel, 631 F.3d at 1178.  Vangile argues the ALJ erred at the second and third steps in her analysis by failing to consider (1) whether his chronic mastoiditis was severe; and (2) whether it met or equaled the severity of one of the listed impairments.  He also says all later steps in the ALJ's analysis were fatally flawed because of these errors at steps two and three.

At the second step of the evaluation process, the ALJ must consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds a claimant does not have a "severe" impairment or combination of impairments, she should conclude the claimant does not have a disability.  Id.  A condition is severe if it "significantly limits claimant's physical or mental ability to do basic work activities."  Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).  If the ALJ finds any severe impairment, she must proceed to the third step of the analysis.  Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).  At step three, the ALJ determines whether the claimant's "medical condition taken as a whole" qualifies as or is medically equivalent to one of the listed disabilities.  Id.; see 20 C.F.R. § 404.1520(a)(4)(iii).  The ALJ must consider the claimant's impairments in combination and determine whether that combination renders the claimant disabled.  Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (per

curiam). This Court has held that an ALJ satisfies this duty so long as she says that she has considered the claimant's combination of impairments. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (holding it was "clear the ALJ considered the combination issue" because the ALJ, after considering all the evidence, stated the claimant was "not suffering from any impairment, <u>or a combination of impairments</u> of sufficient severity" to find him disabled).

In this case, any step two error the ALJ may have committed by failing to explicitly mention Vangile's chronic mastoiditis was harmless because she found two other severe impairments and proceeded to step three in any event. Then, at step three, the ALJ found Vangile did not have a "combination of impairments" that met or was medically equal in severity to one of the listed impairments. To reach this conclusion, it is clear the ALJ considered all of Vangile's impairments—including his chronic mastoiditis—in combination.[2] <u>Hudson</u>, 755 F.2d at 785. Thus, the ALJ did not err by failing to explicitly identify Vangile's chronic mastoiditis when considering whether his "medical condition as a whole" qualified as or was medically equivalent to a listed impairment. <u>Jamison</u>, 814 F.2d at 588.

III.

---

[2] Indeed, although the ALJ did not explicitly mention Vangile's chronic mastoiditis at step three, she did note Vangile "had alleged disability because of chronic mastoiditis" at step four of her analysis.

Finally, Vangile says the ALJ committed several errors in weighing the medical opinion evidence and his testimony.  He argues the ALJ gave great weight to Dr. Ursula Taylor's opinions but ignored specific statements she made about his significant symptoms, high risk of infection, and clear need for regular medical care—all of which supported his claims.  He also says the ALJ erred by relying on K. Wu's opinion because Wu was not a doctor.  Further, Vangile argues the ALJ erroneously discredited his pain testimony.

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (quotation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  Id. (quotation omitted).

We find no reversible error.  First, the ALJ did not err in relying on Dr. Taylor's opinion while failing to mention her specific remarks about his symptoms, risk of infection, and need for medical care.  An ALJ is not required to "specifically refer to every piece of evidence" in her decision so long as the decision allows this Court to conclude that she considered the claimant's medical condition as a whole.  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).  Further, Dr. Taylor's opinion indicated that Vangile had some physical

limitations but could still perform light tasks even with his combination of impairments and symptoms.  This opinion was consistent with and provides substantial evidence for the ALJ's finding on Vangile's residual functional capacity.  That finding, in turn, showed Vangile was not disabled.  In light of Dr. Taylor's conclusions about Vangile's physical limitations, the ALJ did not err by failing to explicitly discuss Dr. Taylor's specific statements about his impairments and symptoms.

Second, the ALJ did not err in relying on Wu's opinion.  A claimant can submit medical opinions from doctors or "other acceptable medical sources" to support his case.  20 C.F.R. § 404.1527(a)(2) (2016).  An ALJ may also consider the opinions of medical sources who do not qualify as medical sources, or those of nonmedical sources.  Id. § 1527(f)(1).[3]  Thus, even though Wu was not a doctor, the ALJ could still consider Wu's opinion.

Lastly, the ALJ's finding that Vangile's testimony was not credible is supported by substantial evidence.  This Court will not disturb a clearly articulated finding on the credibility of a claimant's testimony about pain or other subjective symptoms if there is substantial supporting evidence in the record.  Foote v.

---

[3] Under the now-superseded version of the regulations that governed until March 27, 2017 and were in effect during Vangile's agency proceedings, acceptable medical sources were limited to licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists.  20 C.F.R. § 416.913(a) (2016).  But even then, ALJs could consider evidence from non-acceptable medical sources (including nurse practitioners, physicians' assistants, chiropractors, or therapists), educational or agency personnel, or other nonmedical sources such as spouses, neighbors, or caregivers.  Id. § 416.913(d) (2016).

Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam).  Here, the ALJ made

such a finding when it determined Vangile's residual functional capacity.

Specifically, she found Vangile's "statements concerning the intensity, persistence

and limiting effects of [his] symptoms are not entirely credible."  The ALJ then

noted (1) Vangile "testified to an extensive work history that he had not reported to

the IRS"; and (2) he worked before the alleged onset date of his impairments

despite suffering from the same symptoms at about the same level of severity.

From this, the ALJ surmised that, contrary to Vangile's pain testimony, his

symptoms "would not currently prevent work."  The medical evidence about

Vangile's residual functional capacity, including Dr. Taylor's opinion, is consistent

with this finding.  Thus, there is substantial evidence to support the ALJ's

conclusion that Vangile's testimony about the extent and severity of his

impairments was not credible.[4]

    **AFFIRMED.**

---

[4] Vangile also appears to fault the ALJ for mentioning "[o]nly 2 of the over 10 different [d]octors on record."  This Court has said that "[a]bsent good cause, an ALJ is to give medical opinions of treating physicians substantial or considerable weight."  Winschel, 631 F.3d at 1179 (quotations omitted).  Also, an ALJ "must clearly articulate the reasons" for disregarding a treating physician's opinion.  Id. (quotation omitted and alteration adopted).  In this case, however, any error by the ALJ in disregarding the opinions of some of Vangile's treating physicians was harmless.  The medical evidence considered by the ALJ, which included evidence from one of Vangile's treating physicians (Dr. Gisela Wagner), identified substantially the same symptoms and conditions that were discussed by the other physicians in the record.  Beyond that, to determine whether Vangile qualified as disabled, the ALJ examined the parts of Vangile's medical records that were relevant to his residual functional capacity.  Most of the doctors' records had some treatment notes, but no treating doctor gave an opinion on Vangile's physical limitations or residual capacity.