**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————

No. 24-11246

————————————

PHYLLIS J. GEYER,

*Plaintiff-Appellant,*

*versus*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:23-cv-00225-LLL

————————————

Before NEWSOM and BRASHER, Circuit Judges and HUCK,* District
Judge.

---

* Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

PER CURIAM:

Phyllis Geyer had two strokes: one in 2018, and another in 2022. After the first, she sought disability-insurance benefits from the Social Security Administration (SSA). The ALJ ultimately agreed that she qualified for disability benefits after her second stroke, but found that she could still work before that. Geyer disagrees, and seeks to collect the benefits she feels she was owed after her first stroke.

Geyer raises a few challenges to the ALJ's decision. First, she argues that she did not waive her right to have her daughter represent her. Second, and similarly, she argues that she properly requested to have her daughter serve as a witness to her condition, and she faults the ALJ for failing to call her daughter to testify. Her next four arguments implicate the same basic question: Was the ALJ's finding that Geyer could work prior to 2022 supported by substantial evidence? She challenges the ALJ's determination that she could perform light work, the ALJ's finding that she could perform bilateral fine manipulation prior to her second stroke, the ALJ's decision to not consult the Medical Vocational Guidelines, and the ALJ's allegedly improper evaluation of Dr. de Leon's medical opinion. We hold that (1) Geyer waived her right to representation by her daughter, (2) the ALJ did not have a duty to call Geyer's daughter as a witness, and (3) the ALJ's decision was supported by substantial evidence. Accordingly, we affirm the district court's decision.

**I**

Phyllis Geyer works desk jobs.  From 2004 until the onset of her disability, she was a loan consultant, merchandiser, insurance sales rep, and member-services rep.  In September 2018, she went to the ER complaining of leg heaviness and dexterity issues.  She was tested for—and diagnosed with—a stroke but was discharged the next day.  Her status fluctuated over the course of the next few weeks, but at follow-up doctor's appointments she proved to be fine.

In May of the next year, she applied for disability benefits, claiming she had become disabled one month earlier.  Later that year she met with Dr. Augusto R. de Leon.  She complained of residual right-leg weakness and weak right-arm grip strength, and she said she needed to use a crutch.  She also indicated that she had no limitations sitting, that she could stand and walk for short periods of time, and that she could perform routine daily tasks (cooking, cleaning, finances, etc.).  Dr. de Leon concluded that she had weaker right-side strength but that her range of motion, dexterity, reflexes, and other indicators were normal.  He also observed her get on and off the exam table with ease, squat only halfway down but get up unassisted, walk unsteadily, and use her crutch as a medically necessary assistive device.

Soon after, she had an examination with a state-agency physician, Dr. Shakra Junejo.  Dr. Junejo reviewed Geyer's entire file, including Dr. de Leon's examination, and concluded that Geyer could perform a reduced range of sedentary work.

The Social Security Administration denied Geyer's claim for benefits, so she requested a hearing. At this point, her attorney withdrew, saying, "upon reviewing your file, we have determined that we are unable to assist you any further." Over the course of the next few years while she awaited her hearing, she had a few more doctor's appointments at which she presented normal results.

In February 2022, Geyer unfortunately suffered from a second stroke. An MRI showed extensive white matter in her brain, which is indicative of a stroke. In May, she went back to the hospital after falling and fracturing her hand. She later testified that lower mobility after her second stroke caused her fall. A month later, she sought ER treatment for hypertension.

## II

Geyer's hearing was conducted in June 2022. The ALJ opened the hearing by asking Geyer, "Since you're here today without a lawyer or other representative am I correct in understanding you wish to proceed without such representation?" She responded, "I wish to proceed without a lawyer." She then informed the ALJ that she had previously spoken to an agency employee about having her daughter participate "not so much representing but as a witness to my condition." "[O]ther than that," Geyer said, "I don't have an attorney or anyone else." The ALJ then asked, "[D]id you need more time to obtain representation?" to which Geyer responded, "No." Geyer also told the ALJ that, even though she hadn't had a chance to review her file, she didn't want to postpone the hearing to buy herself some time to review it.

The main testimony at the hearing came from a vocational expert, who concluded that Geyer's past roles as a telephone sales representative and customer-services clerk were sedentary because those positions involved sitting and talking on the phone. Reviewing Geyer's medical records, the ALJ found that Geyer had a "residual functional capacity" to complete light work *before* her second stroke, but that she became disabled (and unable to work) *after* the second stroke. The ALJ concluded that Geyer was able to perform her past relevant work prior to her second stroke in February 2022, and, therefore, that she was disabled only as of February 8, 2022.

Geyer appealed the ALJ's decision to the district court. She argued that (1) the ALJ failed to allow Geyer to use her daughter as her representative, (2) the ALJ had a duty to call Geyer's daughter as a witness, (3) the ALJ incorrectly found that she could perform light work after her first stroke, (4) the ALJ incorrectly discounted the medical opinion of Dr. de Leon, and (5) the ALJ incorrectly found her inability to perform bilateral fine manipulation began only after her second stroke. The district court concluded that Geyer had waived her right to be represented by her daughter, that Geyer suffered no prejudice as a result of not having her daughter called as a witness, and found that the ALJ's determinations were supported by substantial evidence.

This is her appeal.

### III

A district court reviews an ALJ's final determination of benefits eligibility and individual determinations of fact for substantial

evidence, 42 U.S.C. §§ 405(g), 1383(c)(3), which means "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "The [Commissioner's] decision is also reviewed to determine whether the correct legal standards were applied." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

We review de novo both the Commissioner's legal conclusions and the district court's determination that the Commissioner's decision was supported by substantial evidence. *Walker v. Soc. Sec. Admin.*, 987 F.3d 1333, 1338 (11th Cir. 2021).

## IV

Geyer raises six issues on appeal that mirror her arguments at the district court. She argues that (1) she did not waive her right to be represented by her daughter, (2) the ALJ had a duty to call her daughter as a witness at her hearing, (3) the ALJ's finding that she could perform light work before her second stroke was not supported by substantial evidence, (4) the ALJ should have considered the Medical Vocational Guidelines, (5) the ALJ incorrectly found that she could perform bilateral fine manipulation before her second stroke, and (6) the ALJ improperly evaluated Dr. de Leon's medical opinion in making his decision. We take each argument in turn.

## A

Geyer first argues that her colloquy with the ALJ at the beginning of the hearing was not a waiver of her right to

representation, so the ALJ should have allowed her daughter to serve as her representative.

Social Security claimants have a statutory right to representation by counsel at a hearing before an ALJ. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). But that right is waivable if the claimant is fully informed of it. *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982). And even where a hearing proceeds without counsel, the claimant must prove "unfairness at the hearing or clear prejudice" to earn a remand. *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A 1981).

We hold that Geyer waived her right to representation. She argues that telling the ALJ that she wanted her daughter to participate in the hearing "not so much representing but as a witness to [her] condition," wasn't a waiver of her right to representation because she then said, "*other than that*, I don't have an attorney or anyone else." Respectfully, we disagree. Particularly in the light of the facts that she previously had representation—and therefore knew she had that option—and that she declined the opportunity to postpone the hearing to obtain further representation, it is patently clear that Geyer waived her right to representation.

**B**

Geyer contends, though, that "the ALJ still ha[d] a duty to develop a full and fair record" even if she was unrepresented. *Brown*, 44 F.3d at 934. True, but the nature and extent of that duty are contingent: If Geyer waived her right to representation, the ALJ had only "a *basic* obligation to develop a full and fair record,"

*Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added); if she didn't waive her right to representation, the ALJ had a heightened "special duty," *id.*, meaning he would have to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham*, 129 F.3d at 1423 (internal quotation marks omitted).

Because (as already explained) Geyer waived her right to representation, the ALJ was subject only to a "basic" duty to develop the record. That doesn't mean, as Geyer argues, that the ALJ had to hear any witness that she wanted to call. Instead, Geyer must make a "showing of such a clear prejudice or unfairness . . . caused by . . . lack of counsel as would warrant a reconsideration of . . . [her] claims by the [Commissioner]." *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B 1981).

We consider whether "the record as a whole" is "incomplete or inadequate." *Graham*, 129 F.3d at 1423. Geyer hasn't shown what evidence her daughter would have provided that wasn't already covered by her own testimony. And her argument that the ALJ's decision couldn't have been supported by substantial evidence if it didn't include the testimony of her daughter is conclusory—it doesn't prove prejudice. The district court held that "Geyer has established no prejudice from the ALJ's failure to call Geyer's daughter as a witness." We agree and affirm.

## C

Geyer's next four arguments challenge the ALJ's ultimate decision that she didn't qualify for benefits prior to her second stroke.

Before explaining why Geyer's arguments fail, it's worth briefly summarizing how ALJs determine a claimant's eligibility for benefits.  By regulation, an ALJ conducts a five-step evaluation to determine whether an applicant is disabled.   20 C.F.R. § 404.1520(a)(1).  If at any step the ALJ determines that an applicant either is or is not disabled, the ALJ needn't continue.   *Id.* § 404.1520(a)(4).  The five steps are: (1) whether the applicant has done any "substantial gainful activity" since the alleged onset of disability; (2) whether the impairment is severe enough and durationally long enough to be potentially disabling; (3) whether the impairment matches a list of severe impairments that automatically determines disability; (4) whether the applicant's "residual functional capacity" allows her to complete her past relevant work; and (5) whether the applicant's residual functional capacity allows her to pivot to new work based on her age, education, and work experience.  *Id.* § 1520(a)(4)(i)–(v).

Here, the ALJ found that Geyer (1) hadn't engaged in substantial gainful activity since April 2019, (2) has a severe impairment, (3) didn't have one of the requisite severe impairments that

dispositively renders her disabled, and (4) could perform her past relevant work up until February 2022.

### 1

Geyer first challenges the ALJ's finding that she had the functional capacity to perform "light work," with additional limitations prior to February 2022.  Light work involves "lifting no more than 20 pounds," and, when there is little lifting, a "good deal of walking or standing," or, when sitting often, "some pushing and pulling of arm or leg controls."  *Id.* § 404.1567(b).  Geyer argues that Dr. Junejo's October 2019 conclusion that she could only perform a reduced range of sedentary work should have controlled the ALJ's determination.

But she doesn't mention the doctor's appointments in the ensuing years indicating she was on the mend.  The ALJ pointed to multiple pieces of medical evidence indicating that Geyer had improved over the course of 2019, 2020, and 2021.  Specifically, the ALJ found that Geyer's ability to stand and walk had improved, which is why she qualified for "light work" rather than just "sedentary work."  The ALJ's determination that Geyer could perform a reduced range of light work prior to 2022 was supported by substantial evidence.

### 2

Geyer also argues that the ALJ found that she could perform light work rather than the more limiting sedentary work in order to circumvent the Medical Vocational Guidelines—*i.e.*, "The Grids."  But The Grids are relevant only if the ALJ reaches the fifth

24-11246            Opinion of the Court            11

step in the evaluative process outlined above, because they determine whether the applicant is able to pivot to new work. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).  Because the ALJ properly found that Geyer's residual functional capacity allowed her to do her past relevant work up until 2022—a step-four determination—he had no occasion to consider—at step five—whether she was disabled under The Grids.

**3**

Geyer next challenges the ALJ's finding that she lost her ability to perform bimanual fine manipulation starting only after her second stroke.  In Geyer's opinion, her decline started in 2018 when she began experiencing pain in her arms and hands.

The ALJ noted a more significant decline in dexterity after Geyer's second stroke in 2022, as documented by her own prior statements and the medical record.  That's when she began hospital treatment for drooling, voice changes, right-side heaviness, difficulty typing, abnormalities in her hand and arm, fractured hand after a fall, etc.  The evidence on which the ALJ relied reasonably supports the conclusions he reached.  The ALJ's determination is therefore supported by substantial evidence.

**4**

Finally, Geyer challenges the ALJ's evaluation of Dr. de Leon's medical report.  Specifically, she takes issue with the ALJ's finding that she needs a cane only for walking and that she doesn't need it at her (seated) workstation.

An ALJ's review of medical opinions is prescribed by regulation. 20 C.F.R. § 404.1520c. An ALJ considers how supported the medical opinion is by medical evidence, how consistent various medical opinions are, the relationship between the doctor and the claimant, whether the doctor is a specialist, and other factors as necessary. *Id.* at (c)(1)–(5). The first two factors are the most important, and an ALJ is required to explain his consideration of those factors. *Id.* at (b)(2).

As to supportability, the ALJ explained that he found Dr. de Leon's opinion to have "limited value" because not all of the physical limitations the doctor described applied in the workplace. In fact, any movement that Geyer would need to do in the workplace she did in Dr. de Leon's office unassisted by the cane, as he noted in his report. Geyer also told Dr. de Leon that she could perform daily activities like chores, cooking, and cleaning. Geyer objects to the ALJ's decision to discount Dr. de Leon's report, but that doesn't mean the decision to do so was unsupported. The ALJ's discussion shows that he considered how well supported Dr. de Leon's report was by the medical evidence presented to him.

As to consistency, the ALJ noted that Dr. de Leon's opinion was later superseded by subsequent treatment showing that Geyer had improved, further undermining the report's value.

## V

Geyer waived her right to be represented by her daughter, and the ALJ didn't have a duty to call Geyer's daughter as a witness because her evidence would have been cumulative. Further, the

24-11246                Opinion of the Court                13

ALJ's determinations were supported by substantial evidence. Therefore, we **AFFIRM** the district court.