[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  12-13795
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cv-00313-SPC

HAYDEE DELACARIDAD CHILDERS,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 6, 2013)

Before CARNES, BARKETT and JORDAN, Circuit Judges.

PER CURIAM:

Haydee Childers appeals the magistrate judge's order to affirm the Social

Security Administration's denial of her application for Social Security disability

benefits, under Title II of the Social Security Act.  Ms. Childers contends that: (1)

the Administrative Law Judge erroneously determined that her only severe impairments were her possible fibromyalgia, possible neuropathy, and pain disorder; (2) the ALJ's adverse credibility finding regarding her testimony as to her subjective pain was not supported by substantial evidence; (3) the ALJ did not fulfill her duty to fully develop the record before making the adverse credibility finding as to Ms. Childers; (4) the ALJ's hypothetical questions posed to the vocational expert did not include all of her physical and mental impairments; and (5) the ALJ's determination that, despite her many impairments, she could work as a gate guard, guide, or usher was not supported by substantial evidence. Because the ALJ fulfilled her duty to fully develop the record, included all of Ms. Childers' physical and mental impairments in her hypothetical questions posed to the vocational expert, and substantial evidence supports all other findings, we affirm.

In Social Security appeals, we review the Commissioner's decision to determine whether it is supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (quotations omitted). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2

2004)

(alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The parties consented to having the magistrate judge preside over the case and enter a final judgment.

In arriving at a disability determination, the Commissioner must follow a five-step sequential process, as outlined by the Social Security Regulations. *Winschel*, 631 F.3d at 1178.  The Commissioner must make the following inquiries in order:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Id*.  At step two of the sequence, the claimant's impairment or impairments must be classified as either severe or not severe.  *See* 20 C.F.R §§ 404.1520, 416.920.  The claimant bears the burden of establishing that her impairment is, in fact, severe. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  An impairment is classified as not severe "only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work,

3

irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). As the sequence progresses into steps three, four, and five, the ALJ is to consider the claimant's entire medical condition, including any impairment or combination of impairments, whether severe or not. *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987).

Ms. Childers has not satisfied her burden to establish that all of her physical, mental, and communicative impairments were, in fact, severe. *See Jones*, 190 F.3d at 1228. A non-severe impairment is an impairment or combination of impairments that "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R § 404.1521(a). The medical evidence compiled in the administrative record shows that, notwithstanding her impairments, Ms. Childers' physical and mental ability to do basic work activities was not significantly limited. Examples of the physical and communicative "abilities and aptitudes necessary to do most jobs" include the following:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking.

20 C.F.R § 404.1521(b). In evaluating Ms. Childers, Dr. Michael Finkel of the Cleveland Clinic observed that she was able to stand and walk, and had no motor weakness. AR at 235. This is an assessment with which Dr. Neil Johnson agreed,

4

noting that Ms. Childers' motor strength was symmetrical and appeared to be "5 out of 5." *Id*. at 211. Further bolstering the opinions of Drs. Finkel and Johnson, Dr. Kathleen Broderick similarly observed that Ms. Childers' motor system strength was grossly intact. *Id*. at 345. Dr. Broderick's examination also revealed that Ms. Childers was full weight bearing on both feet and able to perform a bilateral deep knee bend. *Id*. Ms. Childers, despite walking slowly, did not require the use of an assistive device when examined by Dr. Johnson. *Id*. at 331. According to Dr. David Guttman, who evaluated Ms. Childers in 2006, she could frequently lift 10 pounds, occasionally lift 20 pounds, and, with normal breaks, sit, stand, walk, push, or pull throughout the duration of an 8-hour workday. *Id*. at 271. In 2009, Dr. Johnson was of the same opinion. *Id.* at 214-15. He found that Ms. Childers could sit, stand, walk, reach, handle, finger, feel, push, or pull, occasionally or frequently throughout a standard workday. *Id*.

Ms. Childers' impairments did not significantly limit her communicative abilities necessary to do most jobs. During her March 2005 interview, conducted by the Social Security Administration for Disability Determination Services, Ms. Childers had no difficulty seeing, hearing, speaking, reading, or writing. *Id*. at 125. In August of 2006, Dr. Guttman, again, noted that Ms. Childers did not suffer any visual or communicative limitations. *Id*. at 273-74. And, in February of 2009,

5

Dr. Johnson, once more, observed that none of Ms. Childers' impairments affected her hearing or vision. *Id.* at 217. With regard to both her physical functions and communicative capacities, Ms. Childers has not met her burden to show that her impairments, found to be non-severe by the ALJ, significantly limited her ability to perform basic work activities.

Ms. Childers' impairments also did not significantly limit her mental abilities necessary to do most jobs. The applicable regulations provide examples of the mental "abilities and aptitudes necessary to do most jobs," which include the following:

> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R § 404.1521(b). Dr. Broderick, in her 2005 examination report, stated that Ms. Childers "could do work related activities involving understanding and memory." AR at 346. Similarly, Dr. Harald Lettner was of the opinion that Childers's "somewhat reduced" mental abilities were not of sufficient severity to prevent her from working. *Id.* at 306. At the time, Ms. Childers' Wechsler Memory Scale score for working memory was above-average, corresponding to the 63rd percentile. *Id.* While Dr. Lettner also found Ms. Childers' judgment to be

6

"somewhat questionable," he did not believe that her emotional status was sufficiently severe to inhibit her from working. *Id*. Dr. Nilsa Rivera, who examined Ms. Childers in 2009, noted marked improvement in Ms. Childers' memory scores, which were then uniformly above-average in every measurable category. *Id*. at 195. Moreover, Dr. Nilsa Rivera, a licenced psychologist, regarded both Childers' insight and judgment as good. *Id*. Most relevant to our inquiry, Dr. Rivera indicated that Ms. Childers was not impaired in any way with regard to her judgment or ability to remember and carry out simple instructions. *Id*. at 205. Dr. Rivera went on to observe that Ms. Childers' ability to interact appropriately with her supervisors, co-workers, and the public was unaffected by her impairments. In sum, with regard to her mental capacities, Ms. Childers has not met her burden to show that her impairments, found to be non-severe by the ALJ, significantly limited her ability to perform basic work activities.

Because Ms. Childers has not shown that all of her physical, mental, and communicative impairments significantly limited her ability to do basic work activities, she has not satisfied her burden to establish that all of her physical, mental, and communicative impairments were, in fact, severe. *See Jones*, 190 F.3d at 1228. The ALJ's finding that some, but not all, of her impairments were severe, is supported by substantial evidence. The medical evidence, including test results

7

and numerous examining physician opinions, supports the finding of the ALJ.

The burden of establishing disability is placed upon the individual seeking Social Security disability benefits. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). When a claimant attempts to establish disability through his or her own testimony of subjective pain, the "pain standard" applies. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The pain standard demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 2005). When coupled with medical evidence which satisfies the pain standard, a claimant's testimony of subjective pain is, in and of itself, sufficient to sustain a disability determination. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 2005). If the ALJ decides to discredit the claimant's testimony, he or she must "articulate explicit and adequate reasons" for doing so. *Id*. The ALJ's finding as to credibility, however, need not be explicit. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). The implication, though, "must be obvious to the reviewing court." *Id*.

Here, the ALJ's adverse credibility finding is supported by substantial evidence.

8

First, the ALJ articulated explicit reasons for discrediting Ms. Childers' testimony. After reviewing Ms. Childers' medical history and the extensive findings and opinions of Drs. Johnson and Broderick, the ALJ found Ms. Childers' statement regarding the severity of her impairments neither entirely credible nor entirely supported by the medical evidence. AR at 52-54. The ALJ noted that Ms. Childers' limited treatment regimen and medication plan were not indicative of a patient suffering from ailments of the severity alleged. *Id*. With totally disabling symptoms, "one might expect to see some indication in the treatment records of restrictions placed on the claimant." *Id*. The ALJ made and clearly articulated this observation in her findings. *Id*. The discrepancies between Ms. Childers' assertions and the voluminous medical reports compiled in the administrative record, explicitly referenced in the ALJ's RFC summation, led the ALJ to discredit Ms. Childers' testimony. Her reasons for doing so were clearly articulated.

Second, the ALJ's clearly articulated and explicit reasons for discrediting Ms. Childers' testimony were adequate and constituted substantial evidence in support of her finding. Ms. Childers' claims of pain, disability, and depression were belied by a record repute with medical evidence to the contrary. The ALJ began by noting Dr. Broderick's report, completed during her consultive examination with Ms. Childers. *Id*. at 52-53. Dr. Broderick's essential findings

9

were that Ms. Childers had "no instability, ankylosis, deformity, enlargement, or effusion of any joint; no contractions of muscles in the extremities; no point tenderness; no flattening of the lumbar lordosis and no scoliosis; no loss of function in any joint; normal muscle strength in all groups, with no atrophy; normal gross dexterity; normal grip strength; and normal fine manipulations and gross dexterity." *Id.* Ms. Childers was, in Dr. Broderick's opinion, "essentially normal." *Id.* In her examination, Dr. Broderick observed that Ms. Childers experienced no limitations when sitting, standing, lifting, carrying, handling, hearing or speaking. *Id.* at 53. Work related activities involving understanding and memory were within Ms. Childers' capabilities, according to Dr. Broderick. *Id.* The opinions of Dr. Broderick, a board certified physician, were given great weight by the ALJ because they were consistent with the claimant's medical record and largely left uncontroverted by other expert opinion. *Id.*

The ALJ then considered the findings of Dr. Johnson, who conducted multiple examinations of Ms. Childers. The ALJ, once more, noted that Dr. Johnson's physical examination of Ms. Childers was "essentially normal." *Id.* During her examination with Dr. Johnson, Ms. Childers' "motor and sensory function remained intact; her reflexes were symmetrical, and no disorientation was noted." *Id.* After noting Dr. Johnson's general impressions of Ms. Childers'

10

condition, the ALJ continued to Dr. Johnson's more specific findings, which directly contradict Ms. Childers' claims of pain and disability. In Dr. Johnson's opinion, Ms. Childers could occasionally lift and carry up to 10 pounds, sit for one hour, walk for one hour, and stand for six hours in an eight-hour workday. She could also shop, travel, ambulate, prepare meals, utilize public transportation, and sort, handle, and use papers and files. *Id.* These capabilities are inconsistent with pain so debilitating as to prevent one from working. Evidence of them constitutes substantial evidence in support of the ALJ's decision to discredit the testimony of subjective pain proffered by Ms. Childers. A reasonable person would accept the ALJ's conclusion that Ms. Childers' testimony of subjective pain, and disability resulting therefrom, was less than credible. We do as well.

The ALJ, however, did not stop there. Although not making an explicit finding as to the credibility of Ms. Childers with regard to her mental state, the ALJ continued on to review her reasons for discrediting Ms. Childers' testimony of mental disability. The opinions of two licensed psychologists, Dr. Lettner and Dr. Rivera, and the test results from two of the most widely used instruments to detect mental disability, the Wechsler Memory Scale-III and the Beck Depression Inventory, all contradicted Ms. Childers' claims of disability due to mental deficiencies. *Id.* at 48. Dr. Lettner, after noting Ms. Childers' admission that she

11

herself did not feel she was depressed, reported that the mental limitations were not sufficient to prevent Ms. Childers from working. *Id.* The ALJ, then turning to the reports of Dr. Rivera, discussed Dr. Rivera's observation of Ms. Childers' improved memory scale scores in 2009, showing Ms. Childers then firmly above-average. *Id.* at 49. The ALJ further noted Dr. Rivera's most pertinent opinion of Ms. Childers' mental capacity. Dr. Rivera reported that Ms. Childers had no limitations in understanding, remembering, and carrying out simple instructions, as well as making judgments on both simple and complex decisions. *Id.* Ms. Childers' ability to interact appropriately with her co-workers, supervisors, and the public was unaffected by any alleged mental deficiency. *Id.* The ALJ's reasons for discrediting Ms. Childers' testimony of subjective symptoms were not only explicitly articulated throughout her opinion, they were adequate, and constituted substantial evidence in support of her decision to do so.

Ms. Childers claims that the ALJ failed to fulfill her duty to fully develop the record before making an adverse credibility determination. The Commissioner has taken the position that Ms. Childers waived her argument as to the ALJ's failure to fully develop the record because she did not raise it below. In the alternative, the Commissioner urges that Ms. Childers' failure to take advantage of the ALJ's offer of a supplemental hearing–at which Ms. Childers would have the

opportunity to present evidence and produce witnesses—dispensed with any prejudice experienced due to the ALJ's failure to call Ms. Childers' husband and sister as witnesses at the initial hearing.  We agree with the Commissioner's alternative argument.

"As a general principle, this court will not address an argument that has not been raised in the district court." *Stewart v. Dept. of Health and Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994).  Ms. Childers, however, has not waived her argument that the ALJ failed to fully develop the record by neglecting to call Ms. Childers' husband and sister.  She raised this issue below in her "Plaintiffs Memorandum in Opposition to Commissioners Decision," filed February 6, 2011.

Whether or not a claimant is represented by counsel, an ALJ has a duty to develop a full and fair record.  *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  Failure to fulfill this duty, however, only necessitates a remand if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* at 935. (quotations omitted).  We have recognized the likelihood of prejudice and the necessity of remand when, as in *Brown*, the "evidentiary gap involves recent medical treatment, which the claimant contends supports her allegations of disability." *Id.* at 936.  In *Brown*, the claimant's husband was available for testimony and yet was not called to testify by the ALJ.  *Brown*, however, involved

13

a claimant who had "great difficulty conveying with any precision" how her subjective symptoms impaired her abilities to function and engage in basic work activities. *Id.* Here, that is not the case. Ms. Childers thoroughly and articulately explained her ailments and the effect they had on her physical and mental well-being. AR at 436-47. Any difficulty Ms. Childers experienced in communicating the severity of her condition to the ALJ was neither alleged nor apparent from the record.

Even if we were to find an evidentiary gap in the record, Ms. Childers has not experienced any unfairness or clear prejudice as a result. The ALJ informed Ms. Childers, in writing, of her right to request a supplemental hearing at which she would have an opportunity to appear, testify, produce witnesses, and offer other evidence in support of her claim. Had the ALJ only afforded her the opportunity to submit additional written statements and exhibits, Ms. Childers may have been able to argue that this opportunity should be discounted, as less valuable than "live testimony, where demeanor can be considered and credibility more readily evaluated." *Brown*, 44 F.3d at 936. The ALJ's June 2009 notification, however, was clear. Ms. Childers had a subsequent opportunity to produce witnesses, including her husband and sister, and chose not to. Accordingly, Ms. Childers was not prejudiced by the lack of familial testimony, and remand is

14

unnecessary.

## II.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). Ms. Childers argues that, because the hypothetical question used by the ALJ to elicit testimony from the vocational expert did not include all medical findings in the record, the vocational expert's answers do not constitute substantial evidence. We disagree.

The ALJ did not err in failing to include, in her hypothetical questions, the specific medical findings of all experts and the symptoms linked to each of Ms. Childers' impairments discovered by those experts. "The hypothetical need only include the claimant's impairments not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (quotation and citation omitted). The ALJ was also "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363. F.3d 1155, 1161 (11th Cir. 2004).

All of the information that Ms. Childers asserts should have been included in the ALJ's hypothetical question, and must be considered for the vocational

15

expert's response to constitute substantial evidence, is either unrelated to her impairments, duplicative of other evidence considered by the vocational expert, or superfluous as mere symptoms of her impairments. The ALJ specified her findings with regard to Ms. Childers' standing, walking, and handing abilities as well as her mental limitations. In addition, the vocational expert was asked to consider the findings of Drs. Johnson and Rivera, two of the physicians who spent the most time monitoring Ms. Childers' physical and mental health throughout the past few years of her life. Not every finding from every examining physician nor every symptom she experienced was included in the hypothetical questions posed to the vocational expert. Unfortunately for Ms. Childers, neither is required.

The ALJ's hypothetical question to the vocational expert included all of Ms. Childers' impairments. The vocational expert's response to that question, therefore, constitutes substantial evidence, and any of the ALJ's findings based on that response are thus supported by substantial evidence.

The ALJ found that she could work as a gate guard, guide, or usher, jobs she found to exist in sufficient numbers in the national economy, given her RFC, age, education, and work experience. Ms. Childers argues that the ALJ erred in finding that she could perform other jobs in the national economy.

Whether due to her vision, wrist, or driving disabilities, or a combination

16

thereof, Ms. Childers asserts that she cannot perform any of the jobs indicated by the ALJ, and that the ALJ's finding that she could, was not supported by substantial evidence.  We are not persuaded.

Beginning with her limitations relating to eyesight, Ms. Childers' assertion that she had a visual acuity of 20/50 in both eyes directly contradicts the findings of the February 2009 physical examination, during which Dr. Johnson observed that Ms. Childers possessed a left-eye uncorrected visual acuity of 20/20.  Also, during his examination, Dr. Guttman found that Ms. Childers had no visual limitations with regard to near acuity, far acuity, depth perception, accommodation, color vision or field of vision.  The reports of these two medical experts do not address Ms. Childers' potential visual acuity upon correction, using simple fixes such as glasses or contacts.  Both are options Ms. Childers could have considered were her vision truly impaired.  Substantial evidence supports the ALJ's finding that Ms. Childers' visual impairments, to the extent she had any, did not prevent her from working as a gate guard, guide, or usher.

Ms. Childers' purported limitations with regard to driving are belied by the record.  In September 2005, Ms. Childers reported that she could and does drive when necessary.  In June 2006, she again reported that she could drive, albeit very little.  And, in December 2008, at the administrative hearing, she testified that she

could and does drive up to a couple of miles at a time. In addition to her multiple admissions of her driving ability, Dr. Johnson, who examined Ms. Childers in February 2009, noted that she could occasionally operate foot controls and occasionally tolerate exposure to operating a motor vehicle. Substantial evidence therefore supports the ALJ's finding that Ms. Childers' driving limitations did not prevent her from working as a gate guard, guide, or usher.

Finally, with regard to her reduced range of motion in the wrist, the medical evidence, including the opinions of medical experts, contradicts Ms. Childers' claims of disability. Dr. Broderick found that Ms. Childers had a normal range of motion in all joints. Substantial evidence supports the ALJ's finding that Ms. Childers' reduced wrist range of motion, if she was, in fact, experiencing any, did not prevent her from working as a gate guard, guide, or usher. Because the ALJ's finding that Ms. Childers could work as a gate guard, guide, or usher is supported by evidence that a reasonable person would accept as adequate to support her conclusion, we affirm.

**AFFIRMED.**