[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14600
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-00048-LJA-TQL


CYNTHIA BROCK,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(December 17, 2018)

Before TJOFLAT, MARTIN, and HULL, Circuit Judges.

PER CURIAM:

Cynthia Brock appeals the District Court's order affirming the Commissioner of the Social Security Administration's ("SSA") decision to deny her application for Supplemental Security Income ("SSI") under 42 U.S.C. § 1383(c)(3).  Brock makes four arguments on appeal.  First, she argues that the Administrative Law Judge ("ALJ") applied improper legal standards by ignoring her attention deficit hyperactivity disorder ("ADHD").  Second, Brock claims the ALJ failed to develop a full and fair record.  Third, Brock says the ALJ applied improper legal standards (a) in weighing the medical opinion evidence and (b) in determining her residual functional capacity ("RFC").  And fourth, Brock argues that the SSA Appeals Council applied improper legal standards when it denied her request for review without reviewing new evidence she submitted.

We consider each argument in turn.

## I.

We review *de novo* whether the Commissioner applied the correct legal standards.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

In determining whether a claimant is disabled, and thus eligible to receive SSI, an ALJ must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."  42 U.S.C. § 1382c(a)(3)(G); *see also* 20 C.F.R. § 416.923(b).  When an ALJ fails to properly consider an impairment or to

evaluate its effects on a claimant's ability to work, remand is required. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001). A diagnosis—by itself—is not an impairment and does not establish the extent of an impairment's effect on a claimant's ability to work. *See Moore*, 405 F.3d at 1213 n.6.

The ALJ followed a five-step process to determine whether Brock is disabled. In doing so, the ALJ answered these questions: (1) is Brock engaged in substantial gainful activity; (2) if not, does she have a severe impairment or combination of impairments; (3) if so, does the impairment, or combination of impairments, meet or equal the listings in 20 C.F.R. § 404, subpart P; (4) if not, can Brock perform her past relevant work in light of her RFC; and (5) if not, whether, based on her age, education, and work experience, Brock can perform other work found in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); 20 C.F.R. §§ 416.920(a)(4)(i)–(v).

At step two, the ALJ found that Brock has eight severe impairments, but ADHD was not one of the eight. Brock does not challenge the step two finding. Instead, she claims the ALJ failed to consider the effects of her ADHD at the later steps of the analysis. At step three, the ALJ is required to "consider the combined effect of all of the [claimant]'s impairments." 42 U.S.C. § 1382c(a)(3)(G). And at step four, "the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th

3

Cir. 2004).  That said, the ALJ need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" that prevents a reviewing court from determining whether the ALJ considered the claimant's entire medical condition.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).

Here, the ALJ's decision shows that he considered all of the relevant medical evidence at steps three and four.  At step three, the ALJ noted that he considered whether Brock has an "impairment or combination of impairments" that meets or equals the listings in 20 C.F.R. § 404, subpart P.  This is enough to show that the ALJ considered all of the relevant medical evidence.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224–25 (11th Cir. 2002) (per curiam).  At step four, the ALJ "considered all symptoms" in determining Brock's RFC.  And even though Brock did not show how her ADHD affected her ability to work,[1] the ALJ did find that Brock has moderate limitations in concentration, persistence, and pace.  To account for those limitations, the ALJ limited Brock to "simple, repetitive tasks" and noted that Brock "cannot perform jobs requiring rigid production quotas,

---

[1] Brock cites medical records that say she has ADHD.  But again, a diagnosis by itself is not an impairment.  *See Moore*, 405 F.3d at 1213 n.6.  Brock does cite a medical record from 2008—which is three years before she filed this application for benefits—that says she has "[p]oor concentration [and] irritability which causes conflicts [at] work."  But the doctor did not attribute this note to Brock's ADHD, and, in any event, Brock's RFC accounts for these limitations.

deadlines, or time schedules." Thus, the record shows that the ALJ did consider the effects of her ADHD.[2]

## II.

Our published cases do not explicitly say what standard of review we use when analyzing a failure-to-develop-the-record claim, but we seem to apply a *de novo* standard. *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); *Brown v. Shalala*, 44 F.3d 931, 934–36 (11th Cir. 1995) (per curiam).

The ALJ "has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *see also* 20 C.F.R. § 416.912(b)(1) (explaining the ALJ will develop the claimant's "complete medical history for at least the 12 months" before the claimant files his or her application). But "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. §§ 416.912(a), (c)).

When deciding whether a case should be remanded so the record may be further developed, "we are guided by 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting

---

[2] The hallmark symptoms of ADHD are being unable to focus (inattentiveness), being extremely active (hyperactivity), and not being able to control behavior (impulsivity). Attention Deficit Hyperactivity Disorder, *A.D.A.M. Medical Encyclopedia* (2018), https://medlineplus.gov/ency/article/001551.htm. Inattentive symptoms include not paying attention to details, making careless errors, having problems focusing on tasks, not listening, failing to follow through on instructions, having difficulty organizing, avoiding tasks requiring mental effort, losing things, being easily distracted, and being forgetful. *Id.*

*Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).  Thus,  "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record."  *See id.*  To show prejudice, the claimant must show that "the ALJ did not have all of the relevant evidence before him in the record . . . , or that the ALJ did not consider all of the evidence in the record in reaching his decision."  *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam).  Generally, there is no prejudice when there is "sufficient evidence" in the record that allows the ALJ "to make an informed decision."  *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Brock argues the ALJ failed to develop the record because the ALJ did not consider medical records from the psychiatric treatment she received during the six months between the hearing (January 2014) and the ALJ's decision (July 2014).  And Brock is right that the ALJ incorrectly assumed that she stopped receiving psychiatric treatment after October 2013.  For example, the ALJ concluded that Brock's alleged mental impairments and the severity of her symptoms were inconsistent with the objective medical evidence.  In doing so, he wrote this: "The undersigned further highlights that there is no documentation of follow-up at Georgia Pines [the place where Brock received psychiatric treatment] since October 2013 . . . . Presumably, were [Brock]'s symptoms as severe as alleged, she

6

would have sought and received further treatment in intervening months." Despite this incorrect assumption, we conclude that remand is unnecessary.

We begin by noting the ALJ was not required to develop Brock's medical history for the period after Brock filed her application for benefits. *See Ellison*, 355 F.3d at 1276. But even if the ALJ had been required to review the medical records for the treatment Brock received between the hearing and the decision, Brock was not prejudiced for at least three reasons.

First, in the record were nearly six years of medical and counseling records, Brock's testimony at the hearing, and a consultative exam that the ALJ ordered. This is "sufficient evidence" that allowed the ALJ "to make an informed decision." *See Ingram*, 496 F.3d at 1269.

Second, the ALJ gave other reasons to support his conclusion that Brock's alleged mental impairments and the severity of her symptoms were inconsistent with the objective medical evidence. The ALJ cited several medical records showing that Brock reported her mental conditions were "stable," and Brock claimed to be doing "good," "okay," or "alright" on many visits. The ALJ also noted that Brock did not take her medication as directed.

Third, Brock's claim that the medical records from October 2013 to July 2014 would have helped her application is speculative. Those records show that Brock's mental status was "stable," and she considered her medication "helpful."

7

If anything, those records seem to support the ALJ's conclusion that Brock's alleged mental impairments and the severity of her symptoms were inconsistent with the objective medical evidence.

### III.

We review *de novo* whether the Commissioner applied the correct legal standards, and we review the Commissioner's decision overall to see if it is supported by substantial evidence. *Moore*, 405 F.3d at 1211. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). If, in light of the record as a whole, substantial evidence supports the Commissioner's decision, we will not disturb it. *Id.* at 1439. Under this standard of review, we will not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178 (alteration in original) (quoting *Phillips*, 357 F.3d at 1240 n.8).

At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering "all relevant medical and other evidence." *Phillips*, 357 F.3d at 1238. The ALJ must "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the

8

claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Id.* at 1178–79 (alterations in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

The law distinguishes between the opinions of treating physicians and the opinions of non-treating examiners. The ALJ must give a treating physician's medical opinion "substantial or considerable weight," unless the ALJ clearly articulates good cause for discrediting that opinion. *Id.* at 1179 (quoting *Lewis*, 125 F.3d at 1440). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Phillips*, 357 F.3d at 1241).

By contrast, the opinions of non-treating examiners are not entitled to deference or special consideration. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). The opinions of non-treating examiners are not substantial evidence and do not amount to good cause for rejecting the opinion of a treating physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

Unless the ALJ gives the opinion of a treating physician controlling weight,[3] the ALJ weighs all medical opinions based on several factors: (1) the examining

---

[3] The ALJ gives the opinion of a treating physician controlling weight if the ALJ "find[s]

relationship, (2) the treatment relationship, (3) the degree to which an opinion is supported by evidence, (4) consistency with the record as a whole, (5) the physician's specialization related to the medical issues, and (6) any other factors that tend to support or contradict the medical opinion.  20 C.F.R. § 416.927(c).  Nothing in the regulations requires the ALJ to explicitly discuss each of the factors in his or her decision.  *See generally* 20 C.F.R. § 416.927.

Brock makes five arguments that relate to physician opinion evidence and the RFC determination.  First, Brock argues that the ALJ made two errors when he rejected the opinions of treating physicians and instead relied on the opinions of non-treating examiners.  Brock claims the opinions of non-treating examiners do not provide substantial evidence to support an administrative decision.  She is correct, *Lamb*, 847 F.2d at 703, but this argument fails because a vocational expert testified that a hypothetical person with Brock's RFC and vocational profile could perform Brock's previous job as a peanut inspector.  This is substantial evidence for the ALJ's decision.  *Wilson*, 284 F.3d at 1227.  Next, Brock says the ALJ relied on the opinions of non-treating examiners as justification for rejecting the opinions of the treating physicians.  Nothing in the ALJ's decision or the record supports this argument.

---

that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).

10

Instead, the ALJ gave significant weight to the opinion of two non-treating examiners because the opinion—that Brock has "the mental capacity to perform simple and routine activities in a stable, low stress work setting, with minimal interpersonal demands"—is consistent with the objective record as a whole.  This was a proper reason for the ALJ to rely on the opinion of non-treating examiners. *See* 20 C.F.R. §§ 416.927(c)(3)–(4).  Similarly, the ALJ properly discounted the opinions of two other physicians.  The ALJ gave little weight to Dr. Kaiser-Ulrey's (who evaluated Brock in person) findings related to Brock's limitations in social functioning and ability to follow work rules.  The ALJ discounted those findings because they were inconsistent with the objective medical evidence and were instead based on Brock's own exaggerations.  The ALJ also discounted the opinions of Dr. Collins[4] because those opinions were based on Brock's subjective reports—which the ALJ did not find credible—not objective medical evidence.

Second, Brock argues that the ALJ substituted his own inexpert opinion in place of the treating physicians' opinions.  The ALJ consistently cited medical evidence and relied on medical opinion evidence in his opinion.  Nothing suggests that he substituted his own opinion for those of the medical doctors.  Brock really seems to be arguing that the ALJ improperly weighed the medical evidence in

---

[4] The ALJ noted that the medical records do not show that Dr. Collins examined or treated Brock.

11

finding Brock's RFC.  As we explained above, the ALJ did not improperly weigh the medical opinion evidence.

Third, Brock argues that the ALJ erred by not accepting all of Dr. Kaiser-Ulrey's opinions.  The ALJ "generally accepted" Dr. Kaiser-Ulrey's opinions.  But the ALJ did not accept Dr. Kaiser-Ulrey's findings related to Brock's limitations in social functioning and following work rules.  The ALJ concluded that those findings were inconsistent with the medical evidence and Dr. Kaiser-Ulrey's own examination.  In her notes, Dr. Kaiser-Ulrey mentioned that Brock appeared to be exaggerating her symptoms, and the ALJ rejected Dr. Kaiser-Ulrey's opinions that seemed to rely on Brock's exaggerated subjective complaints.  Thus, the ALJ did not err in rejecting those opinions.  *See Winschel*, 631 F.3d at 1179.

Fourth, Brock argues that the ALJ did not consider her work history and ADHD.  But the ALJ found that Brock has "moderate difficulties" in social functioning, and he explicitly mentioned that Brock had lost jobs because she "always got into conflicts" at work.  To account for this limitation, the ALJ found that Brock "cannot perform jobs requiring more than occasional casual interpersonal interaction with co-workers and supervisors."  And as we explained above, the ALJ also considered Brock's ADHD.  The ALJ did not err.

Fifth, Brock argues the ALJ disregarded the consistency of the five treating and examining physicians' opinions.  Brock is correct that ALJs are required to

consider several factors—including consistency—when deciding what weight to give a medical opinion. *See* 20 C.F.R. § 416.927(c). But the regulations do not require the ALJ to explicitly address each factor. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). The ALJ also explained why he discounted Dr. Kaiser-Ulrey's opinion and Dr. Collins's opinion, as we explained above. Finally, the ALJ consistently cited to Brock's medical records and the medical opinion evidence to explain his decision; this strongly suggests the ALJ considered all of the medical evidence in the record.[5]

In sum, we reject Brock's challenges to the ALJ's RFC determination, and we find that the ALJ's decision is supported by substantial evidence.

## IV.

Generally, a claimant may present evidence at each stage of the administrative process. *Hargress v. Comm'r of Soc. Sec.*, 883 F.3d 1302, 1308–09 (11th Cir. 2018). "If a claimant presents evidence after the ALJ's decision, the

---

[5] We note that Brock submitted medical opinions from Dr. Vandewalle, Dr. Frady, and Dr. Surratt. But as the ALJ correctly noted, all three opinions were given before the period relevant to Brock's current application. As we explained above, the ALJ must consider "all relevant medical and other evidence." *Phillips*, 357 F.3d at 1238. It is unclear whether this requirement applies to medical opinions given before the period for which a claimant seeks benefits. Our precedent also requires an ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. Again, it is unclear whether this requirement applies to medical opinions given before the period for which a claimant seeks benefits. Here, the ALJ did not assign a particular weight to the opinions of Dr. Vandewalle, Dr. Frady, or Dr. Surratt. But that issue is not before us, because Brock failed to raise it before the District Court and failed to brief it in her opening brief on appeal. Thus, she waived that argument. *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

Appeals Council must consider it if it is new, material, and chronologically relevant." *Id.* at 1309. "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result."[6] *Hargress*, 883 F.3d at 1309.

Here, Brock submitted to the Appeals Council medical records from the psychiatric treatment she received during the six months between the hearing (January 2014) and the ALJ's decision (July 2014). The Appeals Council denied review without considering the additional medical records. We review *de novo* the Appeals Council's decision not to consider the additional medical records. *Washington v. Comm'r of Soc. Sec. Admin.*, 806 F.3d 1317, 1321 (11th Cir. 2015) (per curiam).

The Appeals Council did not err in denying review without considering the additional medical records. Only three of Brock's additional records are chronologically relevant. *See Hargress*, 883 F.3d at 1309 (noting that evidence related to a period after the ALJ's decision is not chronologically relevant). And these three records are same ones we discussed above: they show only that Brock continued receiving psychiatric treatment during the six months between the

---

[6] Effective January 17, 2017, the Commissioner added a new subsection—(a)(5)—to the previously silent 20 C.F.R. §§ 404.970 and 416.1470, requiring claimants to show that new evidence had a "reasonable probability" to change the outcome of the decision. Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987, 90994, 90996 (Dec. 16, 2016) (to be codified at 20 C.F.R. pts. 404, 405, and 406) (stating that the amendment lacked retroactive effect); *compare* 20 C.F.R. §§ 404.970(a), 416.1470(a) (2016), *with* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2017).

hearing and the ALJ's decision.  The three records are immaterial because there's no reasonable possibility that they would change the administrative result.  As we explained above, these records seem to support the ALJ's conclusion that Brock's subjective complaints were inconsistent with the objective medical evidence.  The ALJ did mention the lack of treatment records after October 2013 as one reason that he did not find Brock credible, but he listed other reasons as well.  Thus, the Appeals Council did not err.

V.

The Commissioner's decision is

**AFFIRMED.**